IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michele Sugden,                                  :
                          Petitioner             :
                                                 :
            v.                                   :
                                                 :
Unemployment Compensation                        :
Board of Review,                                 :    No. 1418 C.D. 2023
                          Respondent             :    Submitted: October 8, 2024

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
           HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                          FILED: November 14, 2024

            Michele Sugden (Claimant), *pro se*, petitions this Court for review of
the October 24, 2023 order of the Unemployment Compensation Board of Review
(Board) affirming the decision of the referee to deny Claimant unemployment
compensation benefits (benefits) under Section 402(e) of the Unemployment
Compensation Law (Law),[1] 43 P.S. § 802(e), which provides that a claimant shall
be ineligible for benefits in any week in which her unemployment is due to willful
misconduct connected with her work.  Upon review, we affirm.

## I. Background

            Claimant was employed by Walmart Associates (Employer) as an
automotive department manager from August 2022 to January 2023.[2]  Certified

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§§ 751-919.10.

[2] Claimant's last day of work was January 13, 2023, and Employer terminated her
employment on January 22, 2023.  Certified Record (C.R.) at 109.

Record (C.R.) at 109. Employer's ethics code, which was provided to Claimant, instructs employees to "[a]ct in [Employer's] best interest," to "[n]ever allow personal interests to impact the business decisions [] [made] as a Walmart associate," to "[b]e honest" and "transparent" and to "make decisions that reflect [Employer's] values." *Id.* The ethics code also cautions employees as follows: "Before [y]ou [a]ct, [a]sk [t]hese [q]estions . . . . Is it legal? Is it consistent with our values and [c]ode? Is it in [E]mployer's best interest? If the answer to any of these is 'No,' don't do it." *Id.*

On January 8, 2023, Claimant brought her vehicle to Employer's automotive department to evaluate the cause of a low tire pressure light. C.R. at 109. Claimant informed the mechanic that she had no money for the repair and asked him if there was anything he could do to take care of it. *Id.* The mechanic repaired Claimant's tire with a patch that cost $15, but billed the repair as a no-charge valve stem repair. *Id.* On January 13, 2023, Employer became aware that the repair of Claimant's tire may have involved dishonesty and conducted an investigation. *See id.* An asset protection coach for Employer viewed surveillance video footage of the mechanic's repair of Claimant's tire, which included the valve stem and patch service. *Id.* Claimant provided Employer a written statement regarding the incident, admitting that she asked the mechanic if there was anything he could do because she had no money and further stating, "I know it was wrong and I will accept any punishment coming my way. I am very sorry."[3] *Id.* Employer

---

[3] Claimant's statement to Employer reads in full:

> I[,] Michele Sugden[,] had a light on for low air in my tire so I got it signed in for a flat repair. Paul [Bisbee] was [going to] do the flat repair and I had been having a rough time and told [Bisbee] I had no money for repairs and ask[ed] if the[re] was anything . . . [he could do] to take care of it. I know it was wrong and I will accept any punishment coming my way. I am very sorry.

2

suspended Claimant while continuing the investigation. *Id.* After questioning other employees, Employer determined that Claimant's dishonesty violated its ethics code. *Id.* On January 22, 2023, Employer terminated Claimant for violating its ethics code in connection with the no-charge flat-tire repair. *Id.*

By determination dated April 20, 2023, the Pennsylvania Department of Labor & Industry, Department of Unemployment Compensation Benefits (Department), denied Claimant benefits on the basis that she willfully violated Employer's rule to "make ethical decisions." C.R. at 48. Claimant appealed the denial to a referee. *Id.* at 59-60. In May 2023, the referee held a hearing, in which Claimant and Employer participated. C.R. at 79.

By decision dated May 22, 2023, the referee affirmed the denial, deeming Claimant ineligible for benefits due to willful misconduct pursuant to Section 402(e) of the Law, 43 P.S. § 802(e). C.R. at 108-11. The referee concluded that Employer established the existence of its ethics and integrity policy, that Employer provided this policy to Claimant, that Claimant should have been aware of the policy, and that Claimant violated the policy. *Id.* at 110. The referee did not find credible Claimant's assertion that she intended to pay for the service, highlighting Claimant's failure to render payment by January 13, 2023, when Employer initiated its investigation five days following Claimant's receipt of service. *Id.* Emphasizing Claimant's role as department manager, the referee determined that asking "a subordinate if there [was] anything [he could] do for her because she ha[d] no money" was tantamount to "instructing the subordinate to give her free service." *Id.* Further, the referee concluded that "[w]hether [or not] [] [E]mployer ha[d] a rule . . . , [] [C]laimant's dishonesty amounte[d] to theft." *Id.*

_____

*Id.* at 28.

Moreover, the referee stated that "[w]ith theft, the cost or value of the stolen item or service is immaterial." *Id.* The referee also determined that Claimant failed to demonstrate good cause for her misconduct, "as there is no good cause argument with theft." *Id.* Thus, the referee determined that Employer met its burden to prove Claimant's ineligibility for benefits due to willful misconduct under Section 402(e) of the Law, 43 P.S. § 802(e). *Id.* Claimant appealed to the Board, asserting that she attempted to pay for the service after returning from lunch with money, but was told that the valve stem alone caused the leak, as the screw lay between the tire treads and was not puncturing the tire. *Id.* at 118-19. Further, Claimant stated that she would like Paul Bisbee (Bisbee) and Jacob Fisher (Fisher)[4] to be present at another hearing. *Id.* at 119.

The Board affirmed the denial of benefits by decision mailed October 24, 2023, adopting and incorporating the referee's findings and conclusions. C.R. at 127. The Board resolved conflicts of testimony in favor of Employer and deemed credible the testimony offered by Employer, explaining as follows:

> Here, [] [E]mployer credibly testified that [] [C]laimant requested a free flat repair service on her vehicle in violation of its known and reasonable policy. The monetary value of the repair service does not justify [] [C]laimant's willful violation of [] [E]mployer's policy. As such, [] [E]mployer has met its burden of proving that [] [C]laimant's discharge was for willful misconduct in connection with her work. Therefore, [Claimant] is ineligible for benefits pursuant to Section 402(e) of the Law[, 43 P.S. § 802(e).]

*Id.* at 127-28.

---

[4] Bisbee and Fisher worked as technicians in the automotive department managed by Claimant. C.R. at 59-60.

4

Claimant requested reconsideration of the Board's order. C.R. at 146. Claimant stated that in appealing the denial of benefits, she submitted additional evidence, requested subpoenas for three witnesses, and sought another hearing to "prove [her] truth with the subpoena for [] Bisbee." *Id.* Claimant asserted that she was previously under the false impression that *pro se* claimants were unable to subpoena witnesses. *Id.* at 148. Claimant also "admit[ted] that [she] was NOT prepared for the hearing," maintaining that she has since "done [her] homework and [would be] more prepared if there were to be another hearing." *Id.* Further, Claimant insisted that "Fisher was retaliating against [her] for an incident that happened a week before." *Id.* The Board denied Claimant's request for reconsideration. *Id.* at 150.

Claimant petitioned this Court for review.

## II. Issues

Before this Court,[5] Claimant argues that Fisher retaliated against her for reporting his failure to return from lunch roughly one week before the January 8, 2023 incident involving the flat-tire repair. *See* Claimant's Br. at 25. Claimant also contends that Fisher's statement that she requested his help in connection with the flat-tire repair was false, insisting that she made the request of Bisbee. *See id.* Further, Claimant maintains that she only asked Bisbee to cover the cost of any necessary repairs until she obtained money during her lunch break. *See id.* Claimant concedes that she presented this issue differently in her initial statement to

---

[5] This Court's review is limited to a determination of whether substantial evidence supports necessary findings of fact, whether errors of law were committed, or whether constitutional rights were violated. *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014); *see also* Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. Further, where, as here, the petitioner does not dispute the findings of fact, they are conclusive on appeal. *Gibson v. Unemployment Comp. Bd. of Rev.*, 760 A.2d 492 (Pa. Cmwlth. 2000).

Employer, explaining that she felt rushed in making the statement as she needed to pick up her grandchildren. *Id.* at 8 & 25. Moreover, Claimant asserts that she was not aware of her ability as a *pro se* litigant to subpoena witnesses to appear at the hearing before the referee absent assistance of counsel. *See id.* at 25. Claimant states that in appealing the referee's decision, she "submitted more evidence and requested [three] witnesses be subpoenaed."[6] *Id.*

Claimant also maintains that Employer violated its own harassment policy when several employees followed her around for half an hour upon her return to the store following her termination. *Id.* at 26. Claimant alleges that she thereafter received a paper banning her from the store due to "social media." *Id.* Claimant concedes that she posted a video to TikTok following her termination, but insists that the video did not mention Employer or "any names." Claimant's Br. at 26.

The Board counters that it did not err in affirming the denial of unemployment compensation benefits on the basis that Claimant committed willful misconduct under Section 402(e) of the Law, 43 P.S. § 802(e). Board's Br. at 6-12. Further, the Board asserts that it was not obligated to *sua sponte* issue subpoenas for Bisbee and Fisher. *Id.* at 13-16.

### III. Discussion

### A. Willful Misconduct

Whether an employee's actions constitute willful misconduct[7] is a question of law subject to review by this Court. *Reading Area Water Auth. v.*

---

[6] Claimant states in the "Statement of the Questions Involved" portion of her appellate brief that the "Board didn't acknowledge [her] request to subpoena [three] witnesses." Claimant's Br. at 7.

[7] This Court has defined willful misconduct as:

*Unemployment Comp. Bd. of Rev.*, 137 A.3d 658, 661 (Pa. Cmwlth. 2016). For purposes of determining a discharged employee's eligibility for unemployment compensation, the employer bears the burden of proving that the employee engaged in willful misconduct connected with her work. *See* Section 402(e) of the Law, 43 P.S. § 802(e); *Adams v. Unemployment Comp. Bd. of Rev.*, 56 A.3d 76, 78-79 (Pa. Cmwlth. 2012). When a charge of willful misconduct is based on violation of a work rule, the employer must prove the existence of the rule, the reasonableness of the rule, and the fact of its violation. *Eshbach v. Unemployment Comp. Bd. of Rev.*, 855 A.2d 943, 947 (Pa. Cmwlth. 2004) (citation omitted). Further, "this Court has previously held that an employee's theft from an employer is willful misconduct." *Reading Area Water Auth*, 137 A.3d at 662 (citing *On Line Inc. v. Unemployment Comp. Bd. of Rev.*, 941 A.2d 786, 790 (Pa. Cmwlth. 2008)); *see also Stokes v. Unemployment Comp. Bd. of Rev.*, 379 A.2d 913, 914 (Pa. Cmwlth. 1977) (stating that "[i]t is beyond dispute that stealing from an employer may constitute willful misconduct"). Once an employer establishes a *prima facie* case of willful misconduct, the burden shifts to the claimant to prove good cause for her actions. *Downey v. Unemployment Comp. Bd. of Rev.*, 913 A.2d 351, 353 (Pa. Cmwlth. 2006).

We agree with the Board that Employer met its burden to prove Claimant's ineligibility for benefits due to willful misconduct under Section 402(e) of the Law. C.R. at 108-11 & 127. Employer's ethics policy requires employees to

---

(1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or[] (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations.

*Waverly Heights, Ltd. v. Unemployment Comp. Bd. of Rev.*, 173 A.3d 1224, 1228 (Pa. Cmwlth. 2017) (quoting *Johns*, 87 A.3d at 1009).

"[a]ct in [Employer's] best interest," to "[n]ever allow personal interests to impact an [employee's] business decisions" and to "[b]e honest" and "transparent." C.R. at 109. The Board affirmed the referee's conclusion that Employer established the existence of this policy, that Employer provided the policy to Claimant, that Claimant should have been aware of the policy, and that Claimant violated the policy. C.R. at 110; *Eshbach*, 855 A.2d at 947 (stating that when a charge of willful misconduct is based on violation of a work rule, the employer must prove the existence of the rule, the reasonableness of the rule, and the fact of its violation); *see also Reading Area Water Auth.*, 137 A.3d at 662 (emphasis added) (citation omitted) (stating that "[f]or an employee's conduct to constitute willful misconduct, it must be of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, *or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer*"). Claimant insists that she only asked Bisbee to cover the cost of any necessary repairs until she obtained money during her lunch break. Claimant's Br. at 25. The Board concluded, however, that "[E]mployer credibly testified that [C]laimant requested a free flat repair service on her vehicle in violation of its known and reasonable policy." C.R. at 128; *see also id.* at 110 & 127 (adopting the referee's conclusion that Claimant did not credibly assert that she intended to pay for the service); *Eshbach*, 855 A.2d at 947. "[I]t is not within this Court's authority to disturb the Board's credibility findings." *Narducci v. Unemployment Comp. Bd. of Rev.*, 183 A.3d 488, 498 (Pa. Cmwlth. 2018) (citing *Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1385 (Pa. 1985)) (explaining that "[t]he Board . . . has the sole discretion to determine the credibility of witnesses[ and to] resolve conflicts in the evidence" and, further, that the Board "is free to accept or reject the testimony of any witness in whole or in part"); *Bell v. Unemployment Comp. Bd. of Rev.*, 921 A.2d 23, 26 n. 4 (Pa. Cmwlth. 2007) (holding that "[q]uestions of credibility and the resolution of

evidentiary conflicts are within the discretion of the [Board] and are not subject to re-evaluation on judicial review"); *Dehus v. Unemployment Comp. Bd. of Rev.*, 545 A.2d 434, 438 (Pa. Cmwlth. 1988) (stating that "[t]he Board remains the final arbiter of a witness'[s] credibility"). Further, Claimant concedes that her initial statement to Employer contradicts her present assertion that she intended to pay for the repair. *See* Claimant's Br. at 8 & 25; *see also* C.R. at 28. Moreover, the referee concluded that irrespective of Employer's ethics policy, "[C]laimant's dishonesty amounte[d] to theft." C.R. at 110; *Reading Area Water Auth.*, 137 A.3d at 663 (quoting *Unemployment Comp. Bd. of Rev. v. Vereen*, 370 A.2d 1228, 1231 (Pa. Cmwlth. 1977)) (stating that "[w]e have no doubt that even one isolated instance of theft is sufficient to constitute willful misconduct . . ."); *Unemployment Comp. Bd. of Rev. v. Erb*, 360 A.2d 318, 319 (Pa. Cmwlth. 1976) (explaining that "[a] worker properly discharged for theft is certainly guilty of willful misconduct and, as such, ineligible for unemployment compensation benefits . . ."); *Unemployment Comp. Bd. of Rev. v. Houp*, 340 A.2d 588, 590 (Pa. Cmwlth. 1975) (holding "there is no doubt that [] theft invokes Section 402(e) of the Act and therefore [the c]laimant must be denied benefits"); *cf. Gibson v. Unemployment Comp. Bd. of Rev.*, 760 A.2d 492, 495 (Pa. Cmwlth. 2000) (holding that "when an employee violates a work rule prohibiting theft, the value of the object taken is of no concern: the work-rule violation constitutes willful misconduct"). Thus, the Board correctly concluded that Employer met its burden to prove Claimant's ineligibility for benefits due to willful misconduct under Section 402(e) of the Law.

## B. Subpoenas

Claimant states that in appealing the referee's decision, she "submitted more evidence and requested [three] witnesses be subpoenaed," further specifying in the "Statement of the Questions Involved" portion of her appellate brief that the

"Board didn't acknowledge [her] request to subpoena [three] witnesses." Claimant's Br. at 7 & 25. As this Court has explained previously,

> [t]he Board's regulations at 34 Pa.Code § 101.31 state that "[t]he issuance of subpoenas to compel the attendance of witnesses . . . *may* be obtained on application to the Board, referee, or at any local employment office." . . . Thus, it is clear that issuance of a subpoena is a matter of discretion.

*Flores v. Unemployment Comp. Bd. of Rev.*, 686 A.2d 66, 76 (Pa. Cmwlth. 1996) (deeming meritless "[c]laimant's assertion that issuance [of a subpoena by the Board was] mandatory"). Further, "[t]he law is clear that the Board has discretionary power to decide when a remand hearing is necessary and what issues may be addressed during the hearing." *Harrison v. Unemployment Comp. Bd. of Rev.*, 457 A.2d 238, 240 (Pa. Cmwlth. 1983) (citing Section 504 of the Law, 43 P.S. § 824; 34 Pa. Code §§ 101.104, 101.108). "A rehearing is normally given to afford a party an opportunity to adduce evidence not offered at the original hearing because it was not then available." *Brady v. Unemployment Comp. Bd. of Rev.*, 539 A.2d 936, 939 (Pa. Cmwlth. 1988). Claimant asserts that she was unaware of her ability as a *pro se* litigant to subpoena witnesses to appear at the hearing before the referee absent assistance of counsel. *See* Claimant's Br. at 25. However, the notice of hearing mailed to Claimant advised as follows:

> To help ensure that a witness appears or provides documentary evidence, you may submit a written request in advance of the hearing to the referee for a subpoena . . . .
>
> . . . .
>
> Include in your written request the exact name and title of the witness and/or the specific document(s) you require, and the reason you are requesting it. The referee will issue a subpoena if appropriate.

10

C.R. at 73-74. Moreover, Claimant does not assert that the three witnesses she intended to subpoena following the referee's decision or the evidence they would present was unavailable during the proceedings before the referee. Thus, Claimant's position lacks merit. *See Flores*, 686 A.2d at 76; *Brady*, 539 A.2d at 939 (holding that "[t]he fact that [the] claimant had difficulties in arranging for the taking of his psychologist's testimony [did] not compel a conclusion that such evidence was not available"); *see also Means v. Hous. Auth. of City of Pittsburgh*, 747 A.2d 1286, 1289 (Pa. Cmwlth. 2000) (citation and brackets omitted) (declaring that "any lay person who chooses to represent himself in a legal proceeding must assume the risk that his lack of expertise and legal training may prove to be his undoing . . . .").

## IV. Conclusion

For the foregoing reasons, we affirm the October 24, 2023 order of the Board denying Claimant unemployment compensation benefits.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michele Sugden,                          :
                        Petitioner       :
                                         :
              v.                         :
                                         :
Unemployment Compensation                :
Board of Review,                         :       No. 1418 C.D. 2023
                        Respondent       :

# **O R D E R**

AND NOW, this 14th day of November, 2024, the October 24, 2023 order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge